NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARCUS JONES, : | | |
| : | | |
| Plaintiff, : | | Hon. Dennis M. Cavanaugh |
| : | | |
| v. : | | **OPINION** |
| : | | |
| : | | Civil Action No.: 04-CV-1410 (DMC) |
| : | | |
| COMMISSIONER OF SOCIAL : | | |
| SECURITY, : | | |
| : | | |
| Defendant. : | | |
| : | | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the appeal of Plaintiff Marcus Jones ("Plaintiff"), by his mother Sylvonia Jones, from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Supplemental Security Income benefits ("SSI"). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This matter is decided without oral argument pursuant to Rule 78. As detailed below, it is the finding of this Court that the Commissioner's decision is based on a complete analysis supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

### I. Background

#### A. Procedural History

Plaintiff, alleging disability from severe asthma dating back to August 28, 1999, filed an application for Child's SSI on October 24, 2001. (R. at 41-43; Compl. ¶¶ 4-5.) His claims were

denied initially (R. at 20-23) and on reconsideration. (R. at 29-32.) On March 13, 2002, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 33.) The hearing took place on February 19, 2003, before ALJ Michael H. Noorigian. (R. at 34.) On August 7, 2003, the ALJ issued a decision denying Plaintiff's disability application. (R. at 11-17.) On October 9, 2003, Plaintiff filed a request for review with the Appeals Council. (R. at 10.) The Appeals Council denied Plaintiff's request for review on January 28, 2004. (R. at 4-7.) Upon that denial, the ALJ's ruling became the Commissioner's final decision. (R. at 4.) On March 25, 2004, Plaintiff filed the instant action claiming disability "since at least October 24, 2001." (Compl. ¶ 6.)

### B. Factual History

Plaintiff was born on August 28, 1999. (R. at 41.) Plaintiff's treating physician, Dr. Kottler, in a report dated May 18, 2000, noted Plaintiff suffered from wheezing, coughing and chest congestion dating from September 1999. (R. at 128.) These symptoms required Plaintiff to be hospitalized twice. Id. (See R. at 84-89, 119-21.) As of May 2000, Plaintiff treated his condition with Albuterol via nebulization. (R. at 128.) Upon examination, Dr. Kottler noted that Plaintiff's lungs were well aerated. Id. In addition, Plaintiff's limbs exhibited no signs of clubbing or cyanosis. Id. Nevertheless, Plaintiff suffered from some scattered wheezes and rhonchi bilaterally. Id. Ultimately, Dr. Kottler diagnosed Plaintiff with bronchiolitis, but noted a need for futher examination. Id. In December 2000, Plaintiff was admitted to the emergency room for difficulty breathing but was discharged the same day after receiving medication. (R. at 169-74.)

In February 2001, Plaintiff was admitted to the emergency room. (R. at 175-76.) Upon examination, the doctors found no issues with respiration. Id. Plaintiff did not experience wheezing or rhonchi, and his breath was equal bilaterally. Id. Plaintiff was discharged the same day. (R. at

179.) Again, in June 2001, Plaintiff was admitted to the emergency room with complaints of fever and teary eyes. (R. at 186-87.) Once again, upon examination, the doctors found Plaintiff's lungs free from rhonchi and wheezing. Id. His breath was equal bilaterally. Id. After a doctor administered eye drops, Plaintiff was active and alert. Id. Thus, Plaintiff was discharged the same day. (R. at 189.) In an examination, dated August 17, 2001, Dr. Kottler noted that Plaintiff had "recovered from an episode in July, but now [suffered from] a new upper respiratory infection with mild wheezing and cough." (R. at 130.) Plaintiff had some wheezes and rhonchi, but he had good breath sounds bilaterally and no retractions. Id. Dr. Kottler noted, "[t]he remainder of the physical examination was normal." At the hearing, Plaintiff's mother testified that he uses the nebulizer everyday for medication. (R. at 200.) In addition, she noted that during Plaintiff's three years of day care he left for medical reasons approximately thirty-five times. (R. at 16, 200-02.)

      Plaintiff's mother completed a function report, dated October 18, 2001, and indicated that Plaintiff's abilities were not limited by his asthma. (R. at 59, 63.) In addition, Plaintiff's asthma did not affect his behavior with other people nor did it limit his ability to feed himself and drink from a cup. (R. at 64.) By two years of age, Plaintiff could talk, crawl, stand, walk, climb furniture, throw a ball, dance, jump, walk down steps, run without falling, stack blocks, and scribble like normal children. (R. at 63.) An agency pediatrician reviewed Plaintiff's medical evidence in November 2001, and opined that his asthma was not a severe impairment. (R. at 135.) In making this determination, the examiner compared Plaintiff to other children of the same age who did not have the impairment. (R. at 136).

      Plaintiff's mother completed a second function report, dated February 4, 2002. (R. at 72-78.) In this second report, Plaintiff's mother indicated that, despite all of Plaintiff's other abilities

3

previously noted, he was unable to stack blocks, hold a crayon, and "gets shortness of breath very fast." (R. at 76.) A second agency pediatrician, in March 2002, reviewed Plaintiff's medical evidence. (150-51.) This doctor also found that Plaintiff's asthma was not a severe impairment. Id. In arriving at his decision, the doctor noted that Plaintiff's mother claimed that he could run, but quickly became tired. (R. at 155, 198.) He also noted that Plaintiff only went to the doctor once, in January 2002, since the previous agency review. Id. The doctor also noted that Plaintiff's asthma was well-controlled with medication and that Plaintiff had not been to an emergency room or hospital for some time. Id.

## II. Standard of Review

### A. Determining Disability in Children

The SSI program provides benefits to individuals who meet certain statutory income and resource limitations. 42 U.S.C. § 1381. For children seeking SSI due to disability, the statute states:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). Thus, plaintiffs seeking SSI must show (1) a medically determinable physical or mental impairment; (2) marked and severe functional limitations; (3) both of the previous elements for a continuous period not less than 12 months. Id.

The Commissioner's regulations define "marked and severe functional limitations" sufficient to show childhood disability in terms of Listing-level severity. 20 C.F.R. §§ 416.902, 416.906, 416.926a(a). In addition, the Commissioner utilizes a sequential evaluation process in order to

determine childhood disability. 20 C.F.R. § 416.924. First, the Commissioner determines whether the child is engaged in substantial gainful activities. Second, the Commissioner must decide whether the child has a "severe" impairment or combination of impairments. Finally, the Commissioner decides whether the child's impairment is of Listing-level severity. Id. If a child's impairment or combination of impairments equals a listed impairment, he will be found disabled. 20 C.F.R. § 416.926. If a child's impairment does not equal an impairment contained in the Listing of Impairments, the Commissioner will assess all functional limitations caused by the child's impairments. 20 C.F.R. § 416.926a(a). If the functional limitations caused by the child's impairment are equivalent to the functional limitations of a listed disability, the child will be found disabled. Id.

In order to make this determination, the Commissioner will consider how the child functions in his activities with respect to six domains:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-vi). A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two of the aforementioned domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. A limitation is "marked" if it seriously interferes with the child's ability to independently initiate,

5

sustain, or complete activities. 20 C.F.R. § 416.924a(e)(2). An "extreme" limitation is "more than marked." § 416.924a(e)(3). This adjective describes the very worst limitations. Id. Thus, in order to warrant a disability determination, a child's functional limitations must be more than moderate in at least two domains. § 416.924a(e)(2).

### B. Substantial Evidence Standard

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than

a preponderance.  Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)).  In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  "[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; and the court cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).  Notably, "the district court ... is [not] empowered to

weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### III.  Discussion

Plaintiff raises one argument on appeal: that the decision of the Commissioner is unsupported by substantial evidence. (Pl. Br. 8.) Specifically, Plaintiff contends that

> the ALJ terminated the sequential evaluation process at step two, finding that the four year old Plaintiff with chronic, steroid dependent asthma nevertheless failed to demonstrate a 'severe' impairment. This premature termination of the sequential evaluation makes sense only if this Court, as is the ALJ, is totally ignorant of the Commissioner's own regulations and the law in [the Third] Circuit.

(Pl. Br. 13.) The Commissioner has clarified that "[a]lthough the regulatory language speaks in terms of 'severity'. . . an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (quoting S.S.R. 85-28). The Third Circuit has explained that "any doubt as to whether this showing has been made is to be resolved in favor of the applicant. . . . [T]he Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." Id. Nevertheless, the Third Circuit was careful to note that "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61. In the instant matter, Plaintiff only supports his contentions with references to emergency room visits, which ceased in 2001, and prescription medication, which has controlled Plaintiff's condition. (Pl. Br. at 19-20; R. at 16, 155, 169-76, 186-89.) Therefore, the Court, consistent with the law of the Third Circuit, affirms the Commissioner's

decision as supported by substantial evidence.

Plaintiff argues that his asthma is a severe impairment. (Pl. Br. at 19-20.) However, the Court finds that the record as a whole does not support Plaintiff's contentions. Plaintiff's mother notes that he uses the nebulizer for medication everyday (R. at 200), but the medical evidence shows that Plaintiff's asthma responds well to medication. (R. at 16, 155, 198.) Plaintiff has not been admitted to the hospital since 2001 (R. at 186-87; Pl. Br. 18-19) and, even then, doctors found no respiratory issues. (R. at 175-76, 186-87.) Plaintiff's treating physician notes an upper respiratory infection, in 2001, and bronchiolitis, in 2000; however, Dr. Kottler did not examine Plaintiff on a frequent basis. (R. at 16, 128, 130.) In addition, Plaintiff's mother indicates in the function reports that Plaintiff's abilities are not limited by his condition. (R. at 59, 63-64, 72-78.) Although Plaintiff has missed approximately 35 days of day care in three years, Plaintiff's mother indicated that the day care center, due to insurance concerns, calls her whenever an issue arises. (R. at 16, 200-02.)

The ALJ adequately supported his decision with all of the evidence noted above. (R. at 16.) The ALJ did not deny the presence of an impairment, but properly concluded that Plaintiff's condition was not severe. As such, the Commissioner's determination must be affirmed.

## IV. Conclusion

In light of the above, the Commissioner's final decision denying Plaintiff's request for Supplemental Security Income benefits is **affirmed**. An appropriate Order accompanies this Opinion.


Date:  April 13, 2006                                               S/ Dennis M. Cavanaugh
                                                                                Dennis M. Cavanaugh, U.S.D.J.
Orig:  Clerk's Office